HOWARD, Circuit Judge,
concurring in part and concurring in the judgment.
I agree that the statements by the anonymous 911 caller reporting Brito’s offense were non-testimonial and therefore were admitted consistent with Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). See ante at 62-63. More specifically, I agree that the statements here were properly admitted even if the nature of the inquiry is that, as the lead opinion says, “the testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated, would have had the capacity to appreciate the legal ramifications of her statement.” Ante at 61. I write separately, however, because I do nbt read Crawford to make the declarant’s actual or hypothetically reasonable state of mind the loadstar by which we are to determine if a statement is testimonial. Compare id. at 62. Rather, as I read Crawford, the focus should be on the circumstances in which the statement was obtained, with the declarant’s state of mind (at least in cases where that state of mind is shown to be no more than an awareness, rather than an intention) being only one factor in determining the nature of the circumstances. See Crawford, 541 U.S. at 68, 124 S.Ct. 1354 (defining a testimonial statement by reference to the nature of the proceeding in which the statement was made).
In Crawford, the Supreme Court revised its approach to deciding when a hearsay statement may be admitted at a criminal trial without violating the Confrontation Clause’s guarantee that “the accused shall enjoy the right to be confronted with the witnesses against him.” U.S. Const. Amend. VI. Prior to Crawford, the Court permitted the admission of hearsay from an unavailable declarant so long as it “fell within a firmly rooted hearsay exception” or otherwise bore “particularized guaran *67 tees of the trustworthiness.” Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Crawford overruled Roberts as to so-called “testimonial” hearsay, holding that such hearsay is not to be admitted unless the declarant is unavailable for trial and the defendant had a prior opportunity to cross-examine. See 541 U.S. at 63-68, 124 S.Ct. 1354. The Court did not, however, set forth a definitive definition of the term “testimonial.” See id. at 68, 124 S.Ct. 1354. Instead, it provided three “formulations” of “the core class of testimonial statements” at “various levels of abstraction”:
ex parte in-court testimony or its equivalent—that is material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially [;][2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and][3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
Id. at 51-52, 124 S.Ct. 1354.
As the lead opinion observes, these formulations have engendered a “miasma of uncertainty” among lower courts trying to identify testimonial hearsay. Ante at 55; see also Crawford, 541 U.S. at 68 n. 10, 124 S.Ct. 1354 (recognizing that the Court’s failure to articulate a comprehensive definition of “testimonial” statements will cause “interim uncertainty”). Many courts have resolved this uncertainty by seizing on the most general formulation—a statement is testimonial if the circumstance under which the statement was made would lead an objective witness reasonably to believe that the statement would be available for use at a later trial—and applying it, without sufficient attention to Crawford’s textual and historical rationale. See, e.g., United States v. Summers, 414 F.3d 1287, 1302 (10th Cir.2005); United States v. Cromer, 389 F.3d 662, 675 (6th Cir.2004); United States v. Saget, 377 F.3d 223, 229 (2d Cir.2004); Commonwealth v. Gonsalves, 445 Mass. 1, 12-13, 833 N.E.2d 549 (2005). Courts that have adopted this approach have divided on close questions such as the categorization of various 911 calls. Ante at 60-61. A sounder, more predictable body of law will emerge if, when applying the various “formulations,” we hew closely to what I suggest is the foundational thrust of Crawford.
Crawford employed a historical approach to define the reach of the Confrontation Clause. See id. at 43-50, 124 S.Ct. 1354. In reviewing the historical record, the Court identified “the civil-law mode of criminal procedure” as “the principal evil at which the Confrontation Clause was directed.” Id. at 50, 124 S.Ct. 1354. In particular, the elimination of “ex parte examinations” was the Clause’s main concern. Id.
The Court discussed typical examples of the abusive use of civil-law interrogations in early English law. Id. at 43-47, 124 S.Ct. 1354. It emphasized the practice of justices of the peace examining suspects and witnesses before trial and then reading these examinations in court. Id. at 43, 124 S.Ct. 1354. The Court highlighted the notorious 1603 trial of Sir Walter Raleigh, in which Raleigh was convicted of treason based on a hearsay statement given by Lord Cobham to the Privy Council. Id. at 44, 124 S.Ct. 1354.[7] Dissatisfaction with *68 these practices spawned the common law rule, in practice when the Sixth Amendment was adopted in 1791, that an out-of-court statement given to a government official as part of a formal interrogation could only be introduced if the defendant had previously been able to cross-examine the declarant. Id. at 46-47, 124 S.Ct. 1354.
The historical examples in Crawford all involved the government’s use of formal ex parte examinations to obtain hearsay statements that could later be used at a criminal trial. According to the Court, this historical background demonstrates that the Confrontation Clause was intended to prohibit the government’s use of these procedures where the defendant did not have an opportunity for cross-examination. See id. at 68, 124 S.Ct. 1354.
To support its historical interpretation, the Court examined the Confrontation Clause’s text. Id. at 51, 124 S.Ct. 1354. The Clause applies to “witnesses,” which the Court defined as one “who bears testimony.” Id. In turn, the Court defined testimony as “a solemn declaration or affirmation made for the purpose of establishing or proving a fact.” Id. The Court then synthesized the Clause’s text and history to reach the general conclusion that the Clause “reflects an especially acute concern with a specific-type of out-of-court statement”—i.e., solemn declarations made to government officials in circumstances that resemble the repudiated civil-law mode of interrogation. Id.
It is only after this discussion that the Court set forth its three formulations of testimonial hearsay. Id. at 51-52, 124 S.Ct. 1354. The first two are examples of modern-day practices that resemble the civil-law mode of interrogation (i.e., affidavits, depositions, custodial examinations, prior testimony, confessions, and police interrogations). Id. Only the third presents a general definition without concrete examples. Id. In the historical and textual discussion preceding these formulations, I find no warrant to interpret this third formulation to substantially broaden Crawford’s holding. Instead, we should construe the three formulations as directed at the same concern: preventing the government from using hearsay statements at trial if the statements were obtained through a method that resembles a civil-law mode of interrogation.[8] See Gonsalves, 445 Mass, at 31-32, 833 N.E.2d 549 (Sosman, J., concurring) (stating that courts should strive to “harmonize all three [Crawford ] formulations” instead of allowing the third to swallow the other two); see also United States v. Saner, 313 F.Supp.2d 896, 901 (S.D.Ind.2004) (stating that a statement is testimonial if it was made in circumstances similar “to the abuses at which the Confrontation Clause was directed);” People v. Kilday, 20 Cal.Rptr.3d 161, 173-74 (Cal.Ct.App.2004) (holding that statement obtained by a police officer was non-testimonial because the officer was not acting in an investigative capacity when the statement was made). Under this view, the third formulation ordinarily should be limned by whether the statement was obtained by means of a procedure that resembles formal ex parte interrogation.
*69 To be sure, applying the Crawford formulations in this manner will not easily resolve every close case. But this approach keeps faith with the Supreme Court’s expressed rationale for revising Confrontation Clause jurisprudence, and it will provide courts with a set of concrete examples to use as benchmarks in deciding Confrontation Clause cases. This approach therefore will promote more uniformity in decisions applying Crawford.
Under this approach, a statement obtained by recording a 911 call is non-testimonial in most cases. The purpose of the 911 operator is to provide citizens with an avenue to obtain emergency help from municipal or state personnel. Typically, the 911 operator focuses on ascertaining the location and identity of the caller and the nature of the emergency; she does not investigate or prosecute crimes.
In the Crawford examples, testimonial statements were obtained through proceedings that had a sufficient degree of formality to put the declarant on notice that her narrative would constitute “a solemn declaration or affirmation of a fact.” Crawford, 541 U.S. at 51, 124 S.Ct. 1354. By contrast, the expectation is that 911 calls occur in the midst of an emergencies. They lack the formal trappings and face-to-face contact associated with swearing out an affidavit, giving deposition testimony, testifying in court, confessing to the police, or participating in an interrogation by the police. Because the typical 911 call is distinct from the formal interrogation methods exemplified by the Crawford examples, most statements obtained from 911 calls, including the one at issue here, are non-testimonial.

. The Court also noted various controversial ex parte examinations conducted by English authorities in the Colonies, including the enforcement of the Stamp Act through the pres *68 entation of testimony taken by pretrial deposition or private judicial examination. Id. at 48, 124 S.Ct. 1354.

. The Court described its three formulations as referring to a "core class of testimonial statements,” all of which "share a common nucleus” that implicates the Confrontation Clause. Id. at 51, 124 S.Ct. 1354. It would be inconsistent with the Court's description of these formulations, as defining a single core, to construe one formulation as incorporating situations different in kind from the other two.